# UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| David A. Lipinski,<br><br>       Plaintiff,<br><br>vs.<br><br>Michael J. Astrue, Commissioner of the Social Security Administration,<br><br>       Defendant. | CV 11-0693-TUC-RCC (JR)<br><br>**REPORT AND RECOMMENDATION** |

Plaintiff David A. Lipinski brought this action pursuant to 42 U.S.C. § 405(g) seeking judicial review of a final decision by the Commissioner of Social Security denying his claim for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-433 ("SSA" or the "Act").  Plaintiff asserts that substantial evidence does not support the decision of the Administrative Law Judge ("ALJ") because he failed to properly evaluate the opinions of Plaintiff's physicians and the lay witness statements.  Pending before the court is an Opening Brief filed by Plaintiff (Doc. 14), the Commissioner's Opposition (Doc. 15), and Plaintiff's Reply

1

Brief (Doc. 16).  Based on the pleadings and the administrative record submitted to the Court, the Magistrate Judge recommends that the District Court, after its independent review, remand this case for further proceedings.

## I.  PROCEDURAL HISTORY

Plaintiff last met the insured status requirements of the Social Security Act on June 30, 2001 (Date Last Insured or "DLI").  (Administrative Record (AR) 35.) Plaintiff filed an application for disability insurance benefits ("DIB") in September 2007, alleging disability since December 13, 1996.  (AR 119.)  The Social Security Administration denied Plaintiff's application for DIB initially and upon reconsideration.  (AR 76, 77.)  On September 24, 2009, he appeared with counsel and testified before an ALJ.  (AR 33.)  In a decision issued on January 11, 2010, the ALJ concluded that Plaintiff was not disabled within the meaning of the SSA.  (AR 33-40.)   The Appeals Council denied Plaintiff's request for review of the ALJ's decision.  (AR 13-15.)  This appeal followed.

## II.  FACTUAL HISTORY

### A.  Plaintiff's Background

Plaintiff was born on June 2, 1953, making him 43 years-old at the alleged onset of his disability and 56 at the time of the ALJ's decision.  (AR 52-53, 140.)  He has a high school education and almost four years of college, but no degree.  (AR 53.)  He worked in construction from 1984 through 1996.  (AR 54-55, 151.)  Prior to 1996, he also worked a clerk and a surveyor.  (AR 151.)

2

**B.      Medical Records**

On March 11, 1996, Plaintiff had several x-rays of his shoulders, right ankle, left knee, right knee, lumbosacral spine.  (AR 372-373.)  The imaging report reflects that his left shoulder was normal, his right shoulder and right ankle showed soft tissue calcifications, his left and right knees showed no significant abnormalities, and that his lumbosacral spine had discogenic degenerative changes at L5-S1 and minor disc space narrowing at L4-5.  (*Id.*)

About two weeks later, on March 28, 1996, Plaintiff was seen by John C. Medlen, M.D., who reviewed the x-rays and noted that Plaintiff's lumbar spine had a moderate loss of motion and some tenderness at the L5-S1 level.  (AR 375.)  Dr. Medlen diagnosed moderate L5-S1 degenerative disk disease, chondromalacia of the left knee, and an old fracture of the right ankle.  (*Id.*)

On April 29, 1996, Plaintiff was seen by orthopedic surgeon Nicholas Ransom, M.D., on referral from Dr. Medlen.  (AR 541.)  Dr. Ransom examined Plaintiff and reviewed the x-rays.  (AR 542.)  He noted that the x-rays showed "disc space narrowing to a marked degree at the L5-S1 level and also present to a lesser degree at the L4-5 level."  He also noted facet degenerative changes at those levels. (AR 542.)  Dr. Ransom's complete impression was as follows:

> a 42 year old male who presents with chronic history of progressive low back pain.  Back pain is greater in severity than chronic right lower extremity leg pain problem, which is experienced in a nondermatomal distribution.  This gentleman does have significant underlying lumbar spondylosis changes on plain X-ray.  However he does demonstrate superficial hypersensitivity and tendency towards over-reaction on exam making interpretation of his subjective complaints difficult.  I

3

1

2

3

> suspect this gentleman also has some occult psychiatric problems which may also affect the subjective pain that he experiences from his lumbar spondylosis.  I feel that this psychiatric condition should be evaluated before I would commence any further orthopedic spinal evaluation and recommended treatment for this individual.

4

(AR 542.)  The doctor continued with his recommendations and opinions:

5

6

7

8

9

> [T]his individual's symptoms and findings are consistent and give evidence to support the complaints.  The patient is considered to be disabled as the result of this condition.   The prognosis cannot be determined from the information available at present.  The patient will be managed conservatively with lumbosacral corset trial.  Evaluation of the problems requires more detailed investigation to include lumbar MRI.  Once the results of the recommended studies are compiled, a diagnosis, prognosis and therapeutic recommendation can be made.

(AR 543.)

10

11

12

13

14

15

16

17

18

19

20

21

22

Steven J. Bupp, M.D., then a psychiatrist at Southern Arizona Mental Health Center (SAMHC), first saw Plaintiff, who was going through a divorce, in May 1997 for depression, panic attacks, and suicidal ideation.  (AR 523 & 580-81.)  At that time, Plaintiff admitted suicidal ideations, but denied that he would follow-through because of his kids.  (AR. 573.)  He also was looking to return to school because construction work he had been doing was physically too hard.  (AR 572, 564.)  He also reported that he was looking for a job.  (AR 566.)  By July 1997, his divorce was being finalized and he was reporting that things were getting better and denied suicidal ideation "for now."  (AR 563, 565.)  However, he still reported being depressed.  (AR 564.)

In August, the divorce proceedings were continued and that caused Plaintiff some stress, but he was going to school and contemplating how he would balance

1    school with a job.  (AR 561.)  On August 19, 1997, he missed his appointment, but

2    called to report that "suicidal stuff is @ a lull," and that he was anxious to return to

3    school and work.  (AR 560.)  By September, Plaintiff was reporting that he started

4    dating and had "met a few women who might be interested."  (AR 558.)  He denied

5    any suicidal ideation.  (*Id*.)  Later in the month, however, Plaintiff reported that he

6    had stopped taking his medications and that "panic is more prevalent" and that his

7    sleep was disrupted more.  (AR 557.)  Nevertheless, that same month, he reported

8    that he was "enjoying school, meeting people," but was having trouble with over-

9    sleeping.  (AR 555.)  By phone the next month, he continued to report sleep

10   problems, but stated that he "generally feels better."  (AR 550.)

11        On November 10, 1997, Plaintiff was discharged from treatment at SAMHC

12   based on "[n]oncompliance with Program Rules."  (AR 547.)  The record contains

13   several mentions of alcohol use and non-compliance.  (AR 552, 558, 565, 567, 569,

14   572, 573 (alcohol); 554 (cancelled appointment), 549, 550, 553 (no shows).)  In the

15   summary of goals achieved, the records reflect decreased anxiety and depression, but

16   that Plaintiff continued in his use of alcohol and "hasn't resolved his anger towards

17   [his wife] over divorce."  (*Id*.)

18        After a long gap in treatment, Dr. Bupp again began seeing Plaintiff in August

19   2002, and the record includes Dr. Bupp's clinical notes from 2002 through 2007.

20   (AR 235-53.)  In July 2009, Dr. Bupp completed a Psychiatric Review Technique

21   (PRT) that covered the period of August 2002 through 2009, and also "includes prior

22   dates 1996→8/19/2002."  (AR 506.)  In the PRT, Dr. Bupp opines that Plaintiff

5

1  suffers from affective and anxiety-related disorders. (*Id.*) The affective disorder is

2  described as "depressive syndrome," which causes Plaintiff to lose interest in

3  activities, feel worthless, and have suicidal thoughts, and affects his appetite, sleep,

4  psychomotor skills, and energy levels. (AR 509.) The anxiety related disorder is

5  reported as "recurrent severe panic attacks . . . ." (AR 511.) Dr. Bupp reported

6  marked limitations in activities of daily living; marked limitations maintaining social

7  functioning; extreme limitations maintaining concentration, persistence, and pace;

8  and four or more episodes of decompensation. (AR 506-516.)

9      **C.   Hearing Testimony**

10         **1.   Plaintiff's Testimony**

11     The Plaintiff testified that he is divorced and lives alone. (AR 52.) He was

12  paying his mortgage using an equity loan and was on food stamps. (AR 52-53.) He

13  is 5'10" or 11" and weighs approximately 160 pounds, but his weight had fluctuated

14  from 135 to 170 pounds in the previous year. (AR 53.) He last worked in 1996

15  remodeling houses and doing tile, carpet and wood floors. (AR 52, 56 & 66.) He

16  does do some drawing, painting and wood sculpting from which he rarely makes

17  money, around $200.00 to $1000.00 a year, and therefore considers an expensive

18  hobby. (AR 54-55, 60 & 66.) When he needs to move something heavy, he uses a

19  hand truck, but his hands and back seize-up at times. (AR 60.)

20     Plaintiff explains that when he was divorced, he "just . . . lost it," and cried a

21  lot. (AT 55-56.) He experiences a lot of loneliness and anxiety and thought of

22  killing himself, but did not want to give his ex-wife the satisfaction. (AR 56 & 67-

6

70.)  At that time, he went to SAMHC for treatment and saw Dr. Bupp.  (AR 56-57 & 523.)  He visited Dr. Bupp "every couple weeks" and was on several medications which he found ineffective.  (AR 57-58.)

Plaintiff testified that he had "a lot of injuries" related to a 1977 motorcycle crash that resulted in five reconstructive surgeries of his face.  (AR 58.)  He also has what he describes as migraine-type pain in his lumbar-thoracic area of his back.  (AR 59-60.)  Plaintiff explained that he cannot sleep at night due to insomnia and that he also has narcolepsy which causes him to fall back asleep in the mornings and to pull-over due to tiredness while driving.  (AR. 62.)

Plaintiff described his typical day as getting up to use the restroom around 7:00 a.m.  He will then do some reading, paint a little bit, watch some TV, and then go back to sleep.  (AR 62.)  In the afternoon, Plaintiff will go for a walk of up to five miles in length.  (AR 63.)  He is a good cook, but does not trust his hands not to drop things.  He shops for his own groceries and can manage his own money.  (AR 63-64.)

### 2.    Vocational Expert Testimony

Vocation Expert (VE) Ruth Van Fleet was available at the hearing, however, the ALJ indicated that she had no questions for her.  (AR 74-75.)

### D.    Lay Witness Statement

On October 7, 2007, Plaintiff's sister, Daphne Vannoy, prepared a Function Report-Adult-Third Party statement describing how Plaintiff's condition limits his activities.  (AR 162-69.)  Asked to describe a typical day, she wrote that Plaintiff:

> Has no strength or stamina, he tries to complete tasks and work around his home. He rests frequently and gets mentally depressed and stressed. He needs to lay down, and often, cannot finish tasks started. He tires easily.

(AR 162.) He is able to prepare meals, does laundry, some repairs and "very little cleaning." (AR 164.) He is able to go outside daily, go shopping 1-2 times per month, and handles his own finances. (AR 165.) As for hobbies and interests, he paints, reads, and watches TV, but can no longer golf, hike or maintain his home. (AR 166.) She reports that due his back and joint conditions, he has trouble lifting, squatting, sitting, kneeling and completing tasks. (AR 167.)

## III.   DISABILITY ANALYSIS

### A.   Disability Analysis Standards

For purposes of Social Security benefits determinations, a disability is defined as:

> The inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

20 C.F.R. § 404.1505.

Whether a claimant is disabled is determined using a five-step evaluation process. It is claimant's burden to show (1) he has not worked since the alleged disability onset date, (2) he has a severe physical or mental impairment, and (3) the impairment meets or equals a listed impairment or (4) his residual functional capacity ("RFC") precludes him from doing his past work. If at any step the Commission determines that a claimant is or is not disabled, the inquiry ends. If the claimant

1    satisfies his burden though step four, the burden shifts to the Commissioner to show

2    at step five that the claimant has the RFC to perform other work that exists in

3    substantial numbers in the national economy.  *See* 20 C.F.R. § 404.1520(a)(4)(i)-(v).

4           In this case, Plaintiff was denied at step two of the evaluation process.  At that

5    step, Plaintiff was required to prove that he suffered from at least one "severe

6    medically determinable physical or mental impairment" that met the 12-month

7    durational requirement.  20 C.F.R. § 404.1520(a)(4)(ii) & (c).  A severe impairment

8    is one that significantly limits the Plaintiff's physical or mental ability to perform

9    basic work activities.  20 C.F.R. § 404.1520(c).  "Basic work activities" are the

10   aptitudes necessary to do most jobs, including (1) physical functions such as walking,

11   standing, sitting, lifting, pulling, reaching, carrying or handling; (2) capacities for

12   seeing, hearing, and speaking; (3) understanding, carrying out, and remembering

13   simple instructions; (4) use of judgment; (5) responding appropriately to supervision,

14   co-workers and usual work situations; and (6) dealing with changes in a routine work

15   setting.  20 C.F.R. § 404.1521(b).  According to the Commissioner, "an impairment

16   that is 'not severe' must be a slight abnormality (or a combination of slight

17   abnormalities) that has not more than a minimal effect on the ability to do basic work

18   activities."  SSR 96-3p, 1996 WL 374181, at *1 (1996).

19          The step two severity determination is expressed "in terms of what is 'not

20   severe.'"  *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996).  It is a *de minimis*

21   screening device to dispose of groundless claims.  *Id.* (citing *Bowen v. Yuckert*, 482

22   U.S. 137, 153-54 (1987). "[T]he severity regulation is to do no more than allow the

9

1  [Social Security Administration] to deny benefits summarily to those applicants with

2  impairments of a minimal nature which could never prevent a person from working."

3  SSR 85-28, 1985 WL 56856, at *2 (1985).

4      "An ALJ may find that a claimant lacks a medically severe impairment or

5  combination of impairments only when this conclusion is 'clearly established by

6  medical evidence.'" *Webb v. Barnhart*, 433 F.3d 683, 687 (9th Cir. 2005), quoting

7  SSR 85-28.  In reaching a severity determination, the ALJ is required to consider the

8  claimant's subjective symptoms, such as pain and fatigue, *Smolen*, 80 F.3d at 1290;

9  20 C.F.R. § 404.1529, however, the ultimate determination is made solely on the

10  basis of the medical evidence in the record.  SSR 85-28, 1985 WL 56856, at *4.  The

11  court's role in reviewing the denial of a claim at step two is to "determine whether

12  the ALJ had substantial evidence to find that [the plaintiff] did not have a medically

13  severe impairment or combination of impairments."  *Webb*, 433 F.3d at 687.

14      **B.      ALJ's Decision**

15      The ALJ found that Plaintiff had the following medically determinable

16  impairments: degenerative disc disease, lumbar and cervical spine disorder,

17  depression, and alcohol abuse.  (AR 35.)  However, the ALJ concluded that the

18  Plaintiff's impairments, through his DLI, did not limit his ability to perform work-

19  related activities for 12 consecutive months and, therefore, his impairments were not

20  severe.  (AR 36.)  She then concluded that the Plaintiff was not disabled under the

21  Act.  (AR 39.)

22

1

2      **IV.    STANDARD OF REVIEW**

3              The ALJ's decision to deny disability benefits will be vacated "only if it is not

4      supported by substantial evidence or is based on legal error."  *Robbins v. Soc. Sec.*

5      *Admin.*, 466 F.3d 880, 882 (9th Cir.2006).  "'Substantial evidence' means more than a

6      mere scintilla, but less than a preponderance, i.e., such relevant evidence as a

7      reasonable mind might accept as adequate to support a conclusion."  *Id*.  Substantial

8      evidence is "such relevant evidence as a reasonable mind might accept as adequate to

9      support a conclusion."  *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir.1997).   In

10     evaluating whether the decision is supported by substantial evidence, the Court must

11     consider the record as a whole, weighing both the evidence that supports the decision

12     and the evidence that detracts from it.  *Reddick v. Chater*, 157 F.3d 715, 720 (9th

13     Cir.1998); *see* 42 U.S.C. § 405(g) ("findings of the Commissioner of Social Security

14     as to any fact, if supported by substantial evidence, shall be conclusive").  If there is

15     sufficient evidence to support the Commissioner's determination, the Court cannot

16     substitute its own determination.  *See Young v. Sullivan*, 911 F.2d 180, 184 (9th

17     Cir.1990).

18     **V.      DISCUSSION**

19             Plaintiff argues that the Commissioner's denial of benefits at step two was not

20     supported by a proper evaluation of the medical records and the lay witness

21     statement.  *Plaintiff's Opening Brief* (Doc. 14), pp. 1-2.  He contends that the ALJ

22     failed to accord the proper weight to the opinions of his physicians, Drs. Bupp,

                                                    11

1  Medlen and Ransom, and failed to accord the appropriate weight to the statement of

2  Daphne Vannoy, Plaintiff's sister.  *Id.*, pp. 2-16.  The Commissioner responds that

3  the ALJ properly considered and evaluated the medical source and lay witness

4  opinions, and that the denial of the claim at step two is supported by substantial

5  evidence.  *Defendant's Memorandum in Opposition to Opening Brief* (Doc. 15), pp.

6  5-15.

7       **A.    Evaluation of medical opinions**

8       "The ALJ must consider all medical opinion evidence." *Tommasetti v. Astrue*,

9  533 F.3d 1035, 1041 (9th Cri.2008); *see* 20 C.F.R. § 404.1527(d); SSR 96-5p, 1996

10  WL 374183, at *2 (July 2, 1996).  "[T]he ALJ may only reject a treating or

11  examining physician's uncontradicted medical opinion based on 'clear and

12  convincing' reasons." *Carmickle v. Comm'r Soc. Sec. Admin.*, 533 F.3d 1155, 1164

13  (9th Cir.2008) (citing *Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir.1995)).  Where a

14  treating physician's opinion is contradicted, it may be rejected for specific and

15  legitimate reasons that are supported by substantial evidence in the record.

16  *Carmickle*, 533 F.3d at 1164 (citing *Murray v. Heckler*, 722 F.2d 499, 502 (9th

17  Cir.1983)).  "The ALJ Can 'meet this burden by setting out a detailed and thorough

18  summary of the facts and conflicting clinical evidence, stating his interpretation

19  thereof, and making findings." *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th

20  Cir.2002).  "The opinions of non-treating or non-examining physicians may also

21  serve as substantial evidence when the opinions are consistent with independent

22  clinical findings or other evidence in the record." *Id*.

1

2

3         **1.      Dr. Bupp**

4         Plaintiff asserts that, in light of Dr. Bupp's July 2009 retrospective opinion,

5   substantial evidence does not support the ALJ's step-two decision that his affective

6   and anxiety disorders non-severe.  There is no dispute that in the PRT prepared by

7   Dr. Bupp in 2009, he diagnosed Plaintiff with these disorders and also found him

8   markedly limited in several functional areas.  Plaintiff contends that by failing to

9   mention the retrospective opinion, the ALJ failed give any reason for rejecting the

10  opinion.

11        Retrospective medical opinions should not be discarded solely because they

12  are retrospective. *Smith v. Bowen*, 849 F.2d 1222, 1225 (9th Cir. 1988). *See also*

13  *Bilby v. Schweiker*, 762 F.2d 716, 719 (9th Cir. 1985). It is within the ALJ's power,

14  however, to give less weight or credit to retrospective opinions. *See Johnson v.*

15  *Shalala*, 60 F.3d 1428, 1432–33 (9th Cir. 1995); *Vincent on behalf of Vincent v.*

16  *Heckler*, 739 F.2d 1393, 1395 (9th Cir.1984).   A retrospective opinion may be

17  discredited if it is inconsistent with, or unsubstantiated by, medical evidence from the

18  period of claim disability.  *Johnson*, 60 F.3d at 1433.

19        As noted above, the court's role in reviewing the denial of a claim at step two

20  is to "determine whether the ALJ had substantial evidence to find that [the plaintiff]

21  did not have a medically severe impairment or combination of impairments." *Webb*,

22  433 F.3d at 687.  Here, the ALJ did discuss Plaintiff's treatment at SAMHC in 1997,

1    but made no mention of the Dr. Bupp's 2009 retrospective opinion.   In the Decision,

2    the ALJ first notes that Plaintiff was treated for depression and a panic disorder at

3    SAMHC in 1997 while he was still under insured status.   (AR 35.)   Later in the

4    Decision she provides a summary of that treatment, noting that Plaintiff dismissed

5    suicidal ideations, reported being anxious to return to school and work, and cancelled

6    on failed to show at several appointments.   (AR 38.)   She also notes that Plaintiff did

7    not seek treatment again for these problems until after June 30, 2001, his date last

8    insured.   (*Id*.)

9         From the Decision, the Court cannot determine how the ALJ treated Dr.

10   Bupp's 2009 opinion.   By implication, the ALJ rejected the opinion not because it

11   was retrospective, but because it was not supported by the contemporaneous

12   treatment records from 1997.   However, the Court cannot be certain this was the

13   case.   Given the circumstances, the Court cannot dismiss the possibility that the 2009

14   opinion was rejected because it was proffered beyond the Plaintiff's DLI, or that it

15   was overlooked entirely.   In either case, the ALJ should be given the opportunity to

16   address the report.   *See Jones v. Chater*, 65 F.3d 102, 103 (8th Cir. 1995) (Eighth

17   Circuit reversed a denial of benefits due, in part, to the failure of the ALJ to consider

18   a retrospective medical diagnosis).

19        Moreover, looking at the evidence cited by the ALJ, and in light of its own

20   review of the record, the Court finds that the evidence of depression and anxiety is

21   sufficient to satisfy the low standards of a step-two severity determination.   The

22   Ninth Circuit has emphasized that the step-two inquiry is a *de minimis* screening

14

1   device to dispose of groundless claims. *Smolen*, 80 F.3d at 1290. The types of

2   claims that are screened-out at step-two are those that allege impairments that are so

3   minimal they could "never prevent a person from working." SSR 85-28, 1985 WL

4   56856, at *2 (1985).

5        Here, the ALJ noted in the Decision that during the relevant time period the

6   Plaintiff was going to school, looking forward to working and appeared to be

7   improving during his period of treatment at SAMHC. (AR 550, 555.) However, the

8   records also reveal that the Plaintiff was depressed, suffered from anxiety attacks,

9   and was at least intermittently suicidal. (AR 523, 557, 580-81). Although not

10  necessarily disabling in this case, these impairments are not the sort that could never

11  prevent a person from working. As such, they satisfy the *de minimis* standard of

12  step-two of the disability inquiry.

13             **2.      Drs. Medlen and Ransom**

14       An examination of the records and opinions of Drs. Medlen and Ransom lead

15  the Court to the same step-two conclusion reached in relation to Dr. Bupp. Dr.

16  Medlen noted that Plaintiff suffered from a moderate loss of motion in his lumbar

17  spine and had moderate L5-S1 degenerative disk disease. (AR 375.) Dr. Ransom

18  noted that the x-rays showed "disc space narrowing to a marked degree at the L5-S1

19  level and also present to a lesser degree at the L4-5 level." He also noted facet

20  degenerative changes at those levels. (AR 542.) While Dr. Ransom also noted that

21  there might be some psychological overlay to Plaintiff's pain complaints (AR 542),

22  he nevertheless concluded that the Plaintiff's "symptoms and findings are consistent

15

1  and give evidence to support the complaints," and found that Plaintiff was disabled as

2  the result of this condition.  (AR 543.)

3        As is the case with Plaintiff's psychiatric condition, the ALJ may ultimately

4  conclude that the Plaintiff's physical maladies are not disabling.   However, the

5  impairments identified by Drs. Medlen and Ransom are the sort that, in some cases,

6  could prevent a person from working.   As such, like the alleged psychiatric

7  impairments, they satisfy the *de minimis* standard of step-two of the disability

8  inquiry.

9        **B.**     **Evaluation of Lay Statement of Daphne Vannoy**

10        Plaintiff contends that the ALJ erred in dismissing much of the lay opinion of

11  his sister, Daphne Vannoy.  The Ninth Circuit has explained that:

12            Lay testimony as to a claimant's symptoms or how an impairment
       affects the claimant's ability to work is competent evidence that the
13            ALJ must take into account. We have held that competent lay witness
       testimony cannot be disregarded without comment and that in order to
14            discount competent lay witness testimony, the ALJ must give reasons
       that are germane to each witness.

15  *Molina v. Astrue*, 674 F.3d 1104, 1114 (9th Cir. 2012).  Here, the ALJ did not give

16  significant weight to the testimony of Ms. Vannoy, because she was not medically

17  trained, was not a disinterested third party, and because she found the statement

18  inconsistent with the medical evidence in the case.  (AR 38.)  These reasons are

19  permissible and germane, *see, e.g., Greger v. Barnhart*, 464 F.3d 968, 972 (9th Cir.

20  2006); however, because the Court recommends that this matter be remanded to the

21  ALJ for evaluation of the medical evidence under steps three, four, and, if necessary,

22                          16

1   five, of the disability inquiry, so too should the ALJ reevaluate the lay witness

2   testimony in combination with the inquiry into the medical evidence.

3       **C.    Remedy**

4       The decision whether to remand a matter pursuant to sentence four of 42

5   U.S.C. § 405(g) or to order an immediate award of benefits is within the discretion of

6   the district court. *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000).  Ordinarily,

7   when a court reverses an administrative agency determination, the proper course is to

8   remand to the agency for additional proceedings.  *Moisa v. Barnhart*, 367 F.3d 882,

9   886 (9th Cir. 2004).  Generally, an award of benefits is appropriate only when:

10          (1) the ALJ has failed to provide legally sufficient reasons for
            rejecting such evidence, (2) there are no outstanding issues that must be
11          resolved before the determination of disability can be made, and (3) it
            is clear from the record that the ALJ would be required to find the
12          claimant disabled were such evidence credited.

13  *Smolen v. Chater*, 80 F.3d at 1292.  An award of benefits is appropriate where no

14  useful purpose would be served by further administrative proceedings, or where the

15  record has been fully developed.  *Varney v. Sec'y of Health & Human Servs.*, 859

16  F.2d 1396, 1399 (9th Cir. 1988).

17      Here, the circumstances of this case clearly warrant remand.  Because the

18  Plaintiff's impairments were found to be non-severe, his alleged disability was not

19  subjected to the full analysis required under the Social Security Act.  Thus, in this

20  case, there are outstanding issues to be resolved and the proper course is to remand

21  the case for additional proceedings.

22

1

2

3    **VI.    RECOMMENDATION**

4           For the foregoing reasons, the Magistrate Judge **recommends** the District

5    Court, after its independent review, enter an order remanding the case to the ALJ for

6    further proceedings consistent with this recommendation.

7           Pursuant to Federal Rule of Civil Procedure 72(b)(2), any party may serve and

8    file written objections within 14 days of being served with a copy of this Report and

9    Recommendation.   If objections are not timely filed, they may be deemed waived.

10   The parties are advised that any objections filed are to be identified with the

11   following case number:  **CV-11-693-TUC-RCC.**

12          **Dated this 7th day of March, 2013.**

13

14

15                                    _Jacqueline M. Rateau_

16                                    Jacqueline M. Rateau
                                      United States Magistrate Judge

17

18

19

20

21

22
                                      18